625 So.2d 257 (1993)
Helen B. CALLENDER
v.
Joseph I. CALLENDER.
No. 93-CA-222.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1993.
Rehearing Denied November 17, 1993.
*258 Helen B. Callender, in pro. per.
R. Scott Buhrer, New Orleans, for appellee.
Before GOTHARD and CANNELLA, JJ., and THOMAS F. DALEY, J. Pro. Tem.
THOMAS F. DALEY, Judge Pro Tem.
Appellant, Helen Barios Callender, appeals a trial court judgment partitioning community property between herself and the appellee, Joseph Callender, her former husband.
Appellant and Appellee were divorced on March 14, 1991. On September 3, 1991, a Petition for Partition of the community property was filed by Mr. Callender. A judgment partitioning the community property was signed by the trial judge on June 10, 1992.
Appellant then filed a timely Motion for Partial New Trial challenging portions of the partition judgment. By judgment signed on December 8, 1992, the trial court modified the earlier community property partition judgment to reflect a reduction in the amount of reimbursement due the husband for use of his separate funds to retire the separate mortgage obligation of the appellant. The Motion for Partial New Trial was denied in all other respects.
Mrs. Callender now appeals the above judgments rendered by the trial court asserting that the trial judge erred in her valuation and classification of many of the community assets thereby improperly dividing the marital community, and she assigns eight (8) errors as follows:
I. Classification of a ONE THOUSAND ($1,000.00) DOLLAR certificate of deposit held in Post Office Employees' Credit Union as community property.
II. Valuation of community household furnishings and appliances.
III. Valuation of improvements made to appellant's separate house.
IV. Valuation and classification of silver and gold coins.
V. Valuation and classification of separate owner-financed mortgage of Joseph Callender.
VI. Valuation of Boeing Petroleum Retirement Account.
*259 VII. Denial of Request for Reimbursement of Helen B. Callender's separate pre-marital contribution to the U.S. Postal Service Retirement Account.
VIII. Denial of delayed maintenance for use of Helen Callender's separate house as community residence.
In addition to appealing from these two judgments of the trial court, Mrs. Callender indicated in her Motion and Order for Appeal that she intended to appeal from the trial judge's rulings on numerous other motions which were filed in this case. She failed to pursue an appeal of these rulings in her brief; therefore, those issues are considered abandoned by this court pursuant to Rule 2-12.4 of the Uniform Rules-Courts of Appeal. Nevertheless, we have reviewed the rulings of the trial court on the following motions:
1. Motion to Continue.
2. Motion to Suspend Judgment on Plaintiff's Motion for Partial New Trial and to Compel Answers to Interrogatories and Requests for Production of Documents.
3. Motion and Order to Rescind Judgment of June 10, 1992, in Respect to Award of the Boeing Petroleum Retirement and Savings Plan and to Reinstate and Extend Temporary Restraining Order of September 1, 1992.
4. Motion for Partial New Trial.
We find no errors in the rulings of the trial court on the above motions.
Appellee has submitted an answer to the appeal challenging portions of the original partition assigning the following three errors:
I. The trial court erred in awarding reimbursement to Helen Callender for use of community funds to pay Joseph Callender's child support obligation.
II. The trial court erred in classifying the Boeing Petroleum Services Employees Credit Union Personal Loan and the Boeing Employees Credit Union E-Z Rite Loan as separate obligations of Joseph Callender.
III. The trial court erred in allocating the Boeing Petroleum Retirement and Savings Plan to Joseph Callender without discounting the value of the plan to reflect federal and state income taxes and penalties.
For the following reasons, we affirm in part, remand in part, and modify in part the rulings of the trial court and remand for future proceedings.
A. Appeal
I. Classification of a ONE THOUSAND ($1,000.00) DOLLAR Certificate of Deposit held in Post Office Employees Credit Union
At the termination of the community, three (3) ONE THOUSAND ($1,000.00) DOLLAR certificates of deposit were in the possession of appellant. The trial judge classified all three as community property. Mrs. Callender challenges this determination of the judge with respect to one of the certificates. The certificate at issue here was purchased with Mrs. Callender's last paycheck prior to her separation from Mr. Callender and was classified by the trial judge as community property. Appellant claims that the certificate should have been classified as her separate property. In the alternative, Mrs. Callender argues that Mr. Callender's paychecks for the same time period should have also been included in the list of community assets existing at the date of the partition.
Article 2338 of the Louisiana Civil Code provides:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
In addition, article 2340 provides that things in the possession of a spouse during the existence of the community are presumed to be community property. Turner v. Turner, 533 So.2d 31 (La.App. 4th Cir.1988). At the trial, Mrs. Callender admitted that the certificate was purchased with her earnings during *260 the existence of the community. Since the earnings of either spouse during the community is community property, the certificate which was purchased with those earnings was properly classified as a community asset by the trial judge. See Shel-Boze, Inc. v. Melton, 509 So.2d 106 (La.App. 1st Cir.1987).
Although appellant's assignment of error relates to the trial judge's classification of the above certificate as community property, she proposes an alternative argument in the event that this court determines the certificates were properly classified. Mrs. Callender suggests for purposes of the partition this court should allocate to Mr. Callender a community asset (cash) in the amount of his paychecks during the separation. While it is true that a spouse's earnings during the separation are community property (See LSA-C.C. art 2338), there is no evidence in the record that Mr. Callender possessed any community funds from his paychecks when the community terminated in June of 1990.
This assignment of error lacks merit.
II. Valuation of community household furnishings and appliances
The trial judge assigned a value of FIVE THOUSAND ($5,000.00) DOLLARS to community movables. Appellant contends that this value far exceeds the fair market value of these items.
There is no reliable evidence concerning the total value of the household furnishings and appliances besides the estimated values of the items provided by the parties in their sworn descriptive lists and their trial testimonies. Mr. Callender's testimony indicated an aggregate value of TWELVE THOUSAND TWO HUNDRED SEVENTY ($12,270.00) DOLLARS for these items, and Mrs. Callender's testimony reflected a aggregate value of ONE THOUSAND SEVEN HUNDRED THIRTY ($1,730.00) DOLLARS for these items. A reviewing court must give great weight to the factual conclusions of the trier of fact, and reasonable credibility evaluations and inferences of fact should not be disturbed where there is conflicting testimony. See Suire v. Suire, 532 So.2d 201 (La. App. 3rd Cir.1988).
This assignment of error lacks merit.
III. Valuation of improvements made to Helen Callender's separate house
During the existence of the community approximately FOUR THOUSAND FIVE HUNDRED NINE ($4,509.00) DOLLARS of community funds were used to add furnishings and fixtures to the separate house of Mrs. Callender. The trial judge awarded Joseph Callender TWO THOUSAND TWO HUNDRED FIFTY FOUR ($2,254.00) DOLLARS as a reimbursement for fifty percent (50%) of the community funds spent on his wife's separate property. Appellant contends that the trial court erred by awarding this reimbursement to appellee because (1) the improvements to her property do not qualify for reimbursement under LSA-C.C. art. 2366[1] and (2) Mr. Callender did not produce any documents to support the alleged value of the improvements.
Appellant argues that LSA-C.C. art. 2366 only provides for reimbursement where community property is used for the construction of buildings or other constructions permanently attached to the ground. In doing so, she has improperly combined the first and second paragraphs of this article to suit her needs. Civil Code article 2366 provides that any use of community funds for the acquisition, use, improvement, or benefit of separate property entitles the non-owner spouse to reimbursement. In Breaux v. Breaux, 555 So.2d 1001 (La.App. 3rd Cir. 1990), the house in which husband and wife resided during the marriage was wife's separate property, owned by her prior to marriage. The Court applying Code Article 2366 *261 found the husband was entitled to reimbursement for his share of community funds spent to improve his wife's house.
The trial judge here determined that the construction of the entertainment center, installation of ceiling fans, and performance of other modifications to Mrs. Callender's separate house qualified as reimbursable expenditures of community funds under the article. Since this is a factual determination, it will not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In addition, appellant contends that the amount of the reimbursement was improper. A review of the record reveals that TWO THOUSAND SIX HUNDRED SEVENTY FIVE ($2,675.00) DOLLARS was spent on the custom built entertainment center, ONE THOUSAND THIRTY ONE ($1,031.00) DOLLARS was spent on ceiling fans, FOUR HUNDRED THREE ($403.00) DOLLARS was spent on a built in microwave oven, and FOUR HUNDRED ($400.00) DOLLARS was spent on plumbing fixtures. The total amount of the improvements was FOUR THOUSAND FIVE HUNDRED NINE ($4,509.00) DOLLARS. Article 2366 provides that the other spouse is entitled to a reimbursement equal to one half of the amount or value of the community property expended. Thus, we hold that the trial judge's award of one half of the cost of the improvements, TWO THOUSAND TWO HUNDRED FIFTY FOUR ($2,254.00) DOLLARS, to Mr. Callender was proper.
This assignment of error lacks merit.
IV. Valuation of silver and gold coins
Appellee was awarded reimbursement in the amount of TEN THOUSAND FIVE HUNDRED ($10,500.00) DOLLARS for the use of his separate funds to retire the separate mortgage obligation of the appellant. Included in this amount was SIX THOUSAND ONE HUNDRED FIFTY SEVEN ($6,157.00) DOLLARS from the sale of silver and gold coins which were purchased with appellee's separate funds. The funds consisted of the proceeds from the sale of appellee's separate house. In this assignment of error, appellant asserts that the value attributed to the funds and the designation of those funds as separate property was not supported by the law or facts of the case.
The record reveals that on October 10, 1980, appellee deposited EIGHT THOUSAND ($8,000.00) DOLLARS into his account at the Pan-Amoco Federal Credit Union. Prior to this deposit the account contained less than six dollars. Both parties agree that all of this money was the proceeds from the sale of appellee's separate house. On December 15, 1980, a withdrawal of SEVEN THOUSAND FIVE HUNDRED ($7,500.00) DOLLARS was made, and the funds were used by Mr. Callender to purchase silver coins on that same day.
Mrs. Callender was asked on cross-examination whether she was familiar with Mr. Callender's purchase of various silver coins:
Q. Now, Ms. Callender, are you familiar with the fact that Mr. Callender purchased various silver Krugerands or
A. That's correct. Seventy-four hundred, I think.
Q. Okay.
A. About.
Q. And that was with the proceeds of his house?
A. Yes.
In Curtis v. Curtis, 403 So.2d 56, 59, 60 (La.1981) the Louisiana Supreme Court stated:
"Where separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate status of such property will be upheld."
The trial judge's determination that the silver coins were Mr. Callender's separate property is supported by the record; therefore, we affirm this ruling of the trial judge.
It should also be noted that within this assignment, appellant attempts to re-urge several claims for reimbursement stemming from the payment of appellee's pre-marital debt with community funds. At the trial, appellant made the same claims, and the trial judge denied the reimbursement because appellant failed to make the claims in her detailed list presented prior to trial. Since we *262 find no error in the trial court's decision, we also affirm its rulings on those reimbursement issues.
Accordingly, this assignment of error lacks merit.
V. Valuation of separate owner-financed mortgage of Joseph Callender
When appellee sold his separate home, he financed a portion of the sales price for the purchaser. The amount financed by appellee was THREE THOUSAND SIX HUNDRED ($3,600.00) DOLLARS. All of the proceeds of this loan went to the payment of the note on Mrs. Callender's separate home. The TEN THOUSAND FIVE HUNDRED ($10,500.00) DOLLARS reimbursement to Mr. Callender referred to in the prior assignment of error included the funds realized from the payments on this owner-financed mortgage as well as the proceeds from the sale of coins mentioned previously. Appellant asserts that the proceeds from the sale of the coins and the proceeds from this loan are insufficient to support the TEN THOUSAND FIVE HUNDRED ($10,500.00) DOLLARS reimbursement to appellee.
A review of the record reveals that Mrs. Callender is incorrect in her assertion. In addition to SIX THOUSAND ONE HUNDRED FIFTY SEVEN ($6,157.00) DOLLARS in coin proceeds, and THREE THOUSAND SIX HUNDRED ($3,600.00) DOLLARS in principal payments on Mr. Callender's owner financed mortgage, Mr. Callender also testified that he used NINE HUNDRED NINETY FOUR ($994.00) DOLLARS of separate property to pay down the note on Mrs. Callender's separate home. Thus, the record supports a finding that appellee used at least TEN THOUSAND FIVE HUNDRED ($10,500.00) DOLLARS of his separate property to pay a separate obligation of the appellant, and we find no abuse of discretion by the trial judge in this determination.
Accordingly, this assignment of error lacks merit.
VI. Valuation of Boeing Petroleum Retirement Account
In the judgment partitioning the community signed on June 10, 1992, the trial judge assigned a value of FORTY THREE THOUSAND SEVEN HUNDRED EIGHTY ($43,780.00) DOLLARS to the Boeing Petroleum Retirement Account. Appellant asserts that the judge's valuation of the account was incorrect. She contends that the trial court failed to consider the increase in value of the account between separation and partition due to investment income on the money.
A review of the record reveals that the retirement account was valued at FORTY THREE THOUSAND SEVEN HUNDRED EIGHTY ($43,780.00) DOLLARS on June 5, 1990. In fact, this figure was used on appellee's descriptive list as the June 5, 1990, value. Since the entire account was stipulated to be community property, each spouse continues to be a co-owner until the partition, and both are entitled to benefit from any appreciation in value as the result of investment income between June 5, 1990 and June 10, 1992. See Hare v. Hodgins, 586 So.2d 118 (La.1991).
Because it is impossible to calculate this amount from the record, we remand this matter to the trial court for determination of the appreciated value of the Boeing Petroleum Retirement Account.
VII. Exclusion of Helen B. Callender's separate pre-marital contribution to the U.S. Postal Service Retirement Account
Appellant asserts that she did not receive any reimbursement for the use of her pre-marital funds which were on deposit in her U.S. Postal Services Retirement Account prior to her marriage to appellee. Mrs. Callender asserts that the funds were used to retire community debts. As a result, she contends that she is entitled to a reimbursement equal to 50 percent of her pre-marital funds in the account.
Before Mrs. Callender can claim reimbursement for separate funds allegedly used to retire community debts, she must show that the funds were actually used to benefit the community. Dillenkoffer v. Dillenkoffer, *263 492 So.2d 71 (La.App. 5th Cir.1986), writ denied, 494 So.2d 333 (La.1986). The record does not reflect where the money was spent, and appellant provided no proof that the funds were used to pay community debts. Therefore, we hold that she is not entitled to a reimbursement. Accordingly, this assignment of error lacks merit.
VIII. Exclusion of delayed maintenance for use of Helen Callender's separate house as community residence
After their marriage in 1980, the Callenders resided in the house owned by Mrs. Callender as her separate property. Both parties agreed that the community would maintain her house. Mrs. Callender now asserts that the community failed to properly maintain the house, and she is entitled to a reimbursement for the house repairs which were necessary but unperformed at the termination of the community. Appellee denies appellant's assertion that the house needed major repairs when the community terminated, and he contends that all necessary maintenance was performed during the existence of the community.
The trial judge determined that no valid pre-marital agreement existed in this case thereby denying the claim for reimbursement. The trial court's application of law was incorrect. Article 2329 of the Louisiana Civil Code allows spouses to enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. Accordingly, spouses are free to contract with each other during marriage as to all matters not prohibited by public policy. Examples of contracts which spouses may enter during marriage are contracts to sell or lease property, compromise agreements, and contracts for employment. See LSA-C.C. art. 2329, comment a. Thus, the parties could have entered a contract to maintain Mrs. Callender's house after they were married.
The extent of repairs and maintenance to Mrs. Callender's house was a source of marital conflict. The record reveals that Mrs. Callender made frequent demands on Mr. Callender to perform maintenance and improvements on her house. While residing in Mrs. Callender's house, Mr. Callender performed general maintenance and performed some improvements to the property. Mrs. Callender now asserts additional repairs and improvements were agreed to.
Mr. Callender testified that he was unaware of any major repairs being necessary as of the time he vacated the property. In contrast, Mrs. Callender alleges that NINETEEN THOUSAND FIVE HUNDRED SEVENTY SIX ($19,576.00) DOLLARS worth of repairs were necessary. She testified that the repairs were necessary at the time her former husband left the residence.
Since Mrs. Callender bases her claim against the community for repair and maintenance on an alleged agreement between the community and herself, we must apply traditional contract principles to resolve this dispute. In order for an enforceable contract to exist, there must have been a meeting of the minds as to what consideration the community would provide Mrs. Callender for it use of her house.
Mrs. Callender was asked specifically what was her understanding of the agreement as to maintenance of her house.
"Q. What was your understanding of the agreement between you and Mr. Callender as to the maintenance of your house and furnishings?
A. Well Mr. Callender and I both had pre-marital residences and mine was in a very much nicer neighborhood and also the retail price was considerably higher and rather than buying a new home because prices were soaring in the eighties, we decided to live in my home as a community residence and Mr. Callender decided what to do with his own property, which eventually was put up for sale before he moved into my house and sold after he moved. And my understanding was that Mr. Callender, for the use of my community house which was separate property, would maintain the house. We had discussed it ...
Q. Okay. So can we have you briefly state the nature of the obligations of the two parties?
A. I'm not quite certain."
*264 Based on Mrs. Callender's testimony, this court concludes that there was no clear agreement between the parties as to the extent of maintenance and repairs that Mr. Callender or the community was to perform. Therefore, Mrs. Callender has failed to meet her burden of proving that the parties agreed to perform the repairs for which she now claims reimbursement.
Accordingly, this assignment of error lacks merit.
B. Answer by Appellee

I. Reimbursement to Helen Callender for use of community funds to pay Joseph Callender's child support obligation
Appellee asserts in his answer that the trial judge erred in awarding a reimbursement to appellant for the use of community funds to pay Mr. Callender's child support obligation. Since Mr. Callender was obligated under a court order to pay the child support to his son, he contends that the community should not have been reimbursed for the payments.
Article 2362 of the Louisiana Civil Code provides:
An alimentary obligation imposed by law on a spouse is deemed to be a community obligation.
Article 230 of the Louisiana Civil Code defines alimony as follows:
A. By alimony we understand what is necessary for the nourishment, lodging, and support of the person who claims it.
B. It includes the education, when the person to whom the alimony is due is a minor, or when the person to whom alimony is due is a major who is a full-time student in good standing in a secondary school, has not attained the age of nineteen, and is dependent upon either parent.
Thus, child support is an alimentary obligation, and the court imposed obligation of support in this case is a community obligation. See Ramstack v. Krieger, 470 So.2d 162 (La.App. 4th Cir.1985), writ denied, 474 So.2d 1310 (La.1985). Consequently, under LSA-C.C. art. 2362, appellant is not entitled to the reimbursement which was given to her by the trial court, and we reverse the trial court's award of SEVEN THOUSAND THREE HUNDRED FIFTEEN ($7,315.00) DOLLARS to Helen Callender for child support payments made by the community.
II. Boeing Petroleum Services Employees Credit Union personal loan and the Boeing Employees Credit Union E-Z Rite loan
Following the separation but prior to the termination of the community, Mr. Callender made two loans from the Boeing Petroleum Services Employees Credit Union totalling FIFTEEN THOUSAND ($15,000.00) DOLLARS. The trial judge ruled that the entire amount was the separate obligation of appellee. Mr. Callender now challenges the trial judge's determination that the loans were his separate debt.
Appellant relies on LSA-C.C. art. 2361 which provides:
Except as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations.
Article 2363 of the Louisiana Civil Code provides in part:
A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse.
As evidenced by its ruling, the trial court determined that the loans were not incurred for the common interest of the spouses or for the interest of appellant; therefore, the loans were classified as a separate obligation of the appellee. This being a factual determination it will not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, supra.
Accordingly, we affirm the ruling of the trial judge in this matter.
III. Boeing Petroleum Services Retirement and Savings Plan
Appellee asserts that the value of the Boeing Petroleum Services Retirement and Savings Plan should have been discounted to *265 reflect the after tax value of the asset. Because the funds were not taxed when they were deposited into the account, some tax will be due when the funds are withdrawn. While this is true, there is no legal basis by which this court can reduce the value of an asset to reflect a reduction in value as the result of an uncertain future tax liability.
This assignment of error lacks merit.
The case is hereby reversed as to the trial court's award of reimbursement to Mrs. Callender for child support payments made to Mr. Callender's son, amended to reflect a seven thousand three hundred and fifteen ($7315.00) dollar reduction in the reimbursement due to Mrs. Callender, and remanded for further proceedings consistent with this opinion. The case is affirmed in all other respects.
AFFIRMED IN PART REVERSED IN PART AMENDED IN PART AND REMANDED.
NOTES
[1] LSA-C.C. art. 2366 provides:

If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.
Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.