639 So.2d 399 (1994)
James Watts TOLAR, Plaintiff-Appellee,
v.
Emma Eugenia TOLAR, Defendant-Appellant.
No. 25935-CA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*400 Claudius E. Whitmeyer, Shreveport, for appellant.
G. Ann Winchester, Jonesboro, for appellee.
Before MARVIN, C.J., WILLIAMS, J., and LOWE, J. Pro Tem.
WILLIAMS, Judge.
The defendant, Emma Tolar, appeals the trial court's finding that she waived her right to permanent alimony in an antenuptial agreement. The plaintiff, James Tolar, answers the appeal challenging the trial court's finding that only the property specified in the antenuptial agreement was separate property. For the following reasons, we affirm the judgment of the trial court.

FACTS
James Tolar and Emma Tolar were married on January 1, 1977. Shortly before the marriage, Mr. and Mrs. Tolar filed an antenuptial agreement. On October 25, 1989, the First Judicial District Court granted Mrs. Tolar a judgment of separation. In the judgment, Mrs. Tolar was decreed the owner of an undivided one-half interest in the community property. The judgment reserved the parties' right to litigate the remaining issues concerning the community property and alimony.
On August 11, 1993, Mr. Tolar was granted a judgment of divorce by the Second Judicial District Court. On the incidental issues, the trial court found Mrs. Tolar had waived her right to permanent alimony, the antenuptial agreement that was filed was valid and in full force and effect, and the parties renounced the community of acquets and gains in their antenuptial agreement only with respect to the property listed within the agreement. This appeal ensued.

DISCUSSION

Permanent Alimony
Mrs. Tolar appeals the trial court's finding that she waived her right to permanent alimony. Citing LSA-C.C. Art. 7, she argues public policy prohibits the waiver of permanent alimony.
Article 7 provides:
Persons may not by their juridical acts derogate from laws enacted for the protection of public interest. Any act in derogation of such laws is an absolute nullity.
Spouses are free to contract with each other before or during a marriage as to all matters that are not prohibited by public policy. See LSA-C.C. Art. 2329, Comment *401 A; Holliday v. Holliday, 358 So.2d 618 (La. 1978); Callender v. Callender, 625 So.2d 257 (La.App. 5th Cir.1993).
In Holliday v. Holliday, supra, the Louisiana Supreme Court declared that a stipulation in an antenuptial agreement whereby a party waives the right to alimony pendente lite is null and void as against public policy. The court reasoned that such an agreement violates public policy because spouses owe a duty to support each other during the existence of the marriage. Since a marriage is not dissolved until divorce, this obligation of support continues to exists during the spouses' separation.
However, our jurisprudence has established that the right to permanent alimony can be waived. See e.g., King v. King, 493 So.2d 679 (La.App. 2d Cir.1986), writ denied, 497 So.2d 316 (La.1986); deMontluzin v. deMontluzin, 464 So.2d 948 (La.App. 4th Cir. 1985); Monk v. Monk, 376 So.2d 552 (La. App. 3d Cir.1979).
The right to alimony pendente lite differs from the right to permanent alimony. After the marriage is dissolved, the former spouses no longer have an obligation to support each other. Permanent alimony is in the nature of a pension that can only be obtained by a spouse who is without fault and is without sufficient means for his or her support. Ward v. Ward, 339 So.2d 839 (La. 1976); LSA-C.C. Art. 112. Thus, unlike alimony pendente lite, permanent alimony is not owed as a result of a legal duty and it is not contemplated that a spouse will automatically receive it. We therefore conclude that public policy does not prohibit the waiver of permanent alimony in an antenuptial agreement. The trial court was correct in concluding that Mrs. Tolar was not entitled to demand permanent alimony by virtue of her express waiver of permanent alimony in the antenuptial agreement.

Community Property
Mr. Tolar argues the trial court erred in finding that the community of acquets and gains was renounced only with respect to property listed in the antenuptial agreement. The pertinent language of the antenuptial agreement provides:
The said intended husband and wife hereby declare that the following property now held by each in his own right, its operation, assets, indebtedness and obligations, including acquisitions, expansions thereof or investments of proceeds therefrom remain the exclusive estate of the present owner. They hereby formally renounce those provisions of the Revised Civil Code which establishes [sic] a community of acquets and gains between husband and wife with respect thereto.
Following the declaration reproduced above, the antenuptial agreement lists property owned by the parties as of the date of the agreement.
Mr. Tolar argues the antenuptial agreement establishes a separate property regime. He contends neither party had any reason to enter into the antenuptial agreement except to renounce the community of acquets and gains. Mr. Tolar asserts parol evidence should have been admitted to clarify the language of the agreement.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. Art. 2046; Sharpe v. Sharpe, 536 So.2d 434 (La.App. 4th Cir.1988), writ denied, 540 So.2d 332 (La.1989). The meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence. LSA-C.C. Art. 1848; Billingsley v. Bach Energy Corp., 588 So.2d 786 (La. App. 2d Cir.1991). Although parol evidence is inadmissible to vary the terms of a written contract, if the terms of a written contract are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and show the intent of the parties. Billingsley, supra. However, when a clause in a contract is clear and unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its *402 spirit. Spohrer v. Spohrer, 610 So.2d 849 (La.App. 1st Cir.1992).
Here, the contract's terms are clear and unambiguous. It is quite clear that the agreement between the parties addresses only the property owned by the parties prior to their marriage. Contrary to Mr. Tolar's assertions, the phrase "with respect thereto" refers to the property listed in the agreement. Thus, the clear and explicit language of the antenuptial agreement does not purport to establish a separate property regime. We conclude the trial court did not err in finding that the community of acquets and gains was renounced only with respect to the property listed in the antenuptial agreement.

CONCLUSION
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are equally assessed to the plaintiff and defendant.
AFFIRMED.