IjHIGHTOWER, Judge.
In this tort suit by an employee of the Town of Columbia, the trial court granted judgment against another municipality and Louisiana Municipal Risk Management Agency (“LMRMA”), the alleged uninsured motorist carrier for plaintiff’s employer. We reverse in part and affirm in part.

Facts and Procedural History

On the morning of January 12, 1989, Otha L. Tugger, a garbage truck driver for the Town of Columbia (“the Town”), entered the Magnolia Sanitary Landfill facility in Monroe. While he stood beside his 1983 Chevrolet discharging its load, another waste disposal truck suddenly backed into Tugger, pinning him between the two vehicles and seriously injuring his left arm. The City of Monroe (“the City”) owned the second truck, operated by a sanitation department employee, Dennis Pruitt.
Seeking recovery, Tugger initially filed suit against the City and its alleged insurer, Continental Casualty Insurance Company. By subsequent amendment, he named LMRMA as an additional defendant, contending that agency provided his employer with uninsured motorist coverage. The City then cross-claimed Continental and filed a third party demand against the operator of the landfill, American Waste and Pollution Control Company, and its corporate parent, Waste Management, Inc. (two entities collectively designated as “Waste Management”). Finally, the Town intervened for reimbursement of worker’s compensation benefits.
After summary proceedings and trial on the merits, the district court dismissed all claims against Continental and Waste Management, while finding the City to be 100% at fault in causing the accident.[1] The ensu- *771 mg judgment awarded plaintiff the sum of $409,821.83 against that municipality and LMRMA,[2] in addition to granting recovery on the Town’s intervention. Both the City and LMRMA now appeal.
| ¿Discussion
I.
Shortly after LMRMA’s formation in 1979, pursuant to LSA-R.S. 33:1341, et seq., the Town joined that association designed to provide interlocal risk management and group self-insurance funds for various Louisiana municipalities and political subdivisions. Such an agency unmistakeably is not an insurance company or insurer, its actions do not constitute participation in an insurance business, and neither is it subject to the provisions of Title 22, Chapter 1, of the Louisiana Revised Statutes. LSA-R.S. 33:1345; Logan v. Hollier, 424 So.2d 1279 (La.App. 3d Cir.1982).
Not oddly then, in appealing the district court decision, LMRMA asserts that the risk management agency’s contract does not provide uninsured motorist protection for employees of participating municipalities. In an earlier unpublished opinion (Tugger v. Continental Cas., 24,011, 604 So.2d 1068 (La. App.2d Cir.1992)) addressing this question, we reversed a summary judgment in favor of the association, after concluding that the then-submitted agreement between the Town and LMRMA appeared to be incomplete. At that juncture, we also noted the organization’s acknowledgement, in a pretrial statement, that its “contractual indemnity agreement” provided “uninsured motorist protection.” Thus, in order to resolve adequately the point at issue, further documentation and testimonial evidence became necessary.
The subsequent trial demonstrated that, to facilitate its interlocal risk management program, LMRMA enters into agreements whereby that agency utilizes pooled funds to indemnify participating municipalities against certain sums these governmental bodies become legally obligated to pay. As shown by exhibit, however, the association’s Business Auto Coverage Agreement with the Town does not mention uninsured motorist indemnity, other than simply listing that coverage on the declarations page. Rather, in two separate paragraphs, that agreement specifically excludes coverage for any employee of a participating municipality who, like Tugger, is injured in the course of his employment, or who, also like Tugger, is eligible for worker’s compensation benefits 1 .-¡from the participant.
Both Larry Gaspard, the LMRMA representative, and Mayor James Sherman testified that they intended for any UM coverage to protect only non-employee guest passengers of municipal vehicles. The mayor, who owns an insurance business and personally negotiated the contract in order to obtain coverage satisfying all his concerns, recognized that the uninsured motorist indemnity did not extend to employees of the Town, i.e., those persons protected by worker’s compensation. Gaspard explicitly stated that LMRMA never provides UM coverage for municipal employees, and that the only related indemnity offered is strictly intended for non-employee guest passengers of city vehicles.
We thus disagree with the trial court conclusion that UM coverage still applied. When a contract is susceptible to more than one interpretation, or where there is uncertainty or ambiguity as to the provisions of the agreement, parol evidence is admissible to clarify the ambiguity and show the intent of the parties. Tolar v. Tolar, 25,935 (La.App.2d Cir. 06/22/94), 639 So.2d 399; Doyal v. Pickett, 628 So.2d 184 (La. App.2d Cir.1993). While nowhere defining the term “uninsured motorist” found on its declarations page, the indemnity agreement in question is not controlled by Title 22 of the Louisiana Revised Statutes. Hence, confronted with the necessity to ascertain the intent of the parties to the contract, the district court manifestly erred in rejecting their consistent testimony in that regard.
Moreover, inasmuch as LMRMA is not an insurance company nor Tugger a par *772 ty to the indemnity agreement, he cannot proceed directly against that agency. See Logan, supra. And, that deficiency, i.e., that no right of direct action exists under the circumstances, may be noticed by either the trial or the appellate court on its own motion. See LSA-C.C.P. Art. 927; Massey v. Decca Drilling, 25,973 (La.App.2d Cir. 12/07/94), 647 So.2d 1196.
Accordingly, we reverse that portion of the lower court judgment easting LMRMA as the uninsured motorist insurer of the Town of Columbia.
JJI.
Under the provisions of its contract with the City of Monroe, the landfill operator owed a duty to maintain the Magnolia facility in a manner allowing safe operations there, together with access by vehicles. Thus, proceeding as third party plaintiff against Waste Management, the City predictably claimed that poor conditions at the accident site contributed to the January 1989 mishap. On appeal, although neither denying its employee’s negligence nor challenging the negative fault assessment against Tugger, the City assails the trial court’s failure to find that either the muddy setting or the landfill design posed an unreasonable risk of harm.
The owner or person having custody of immovable property has a duty to keep the premises in a reasonably safe condition. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App.2d Cir.1992). Even so, to recover under either negligence or strict liability theories, a plaintiff must prove that a “defect” (i.e., a condition creating an unreasonable risk of harm) existed on the premises and that this condition caused his injury. Townsend v. Westinghouse Elevator Corp., 25,966 (La.App.2d Cir. 08/17/94), 641 So.2d 1022, writ denied, 94-2371 (La. 11/29/94), 646 So.2d 403; Bradford, supra. The determination of whether a particular condition presents an unreasonable risk of harm requires balancing the intended benefit of the thing against its potential for harm and the cost of prevention. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991). Likewise, in resolving causation, a court must consider whether the conduct complained of constituted a substantial factor in producing the harm. Id.
Without question, the ground at the landfill had become muddy due to rains over the region for a few days before the accident. Beyond that, the City maintains that, when Pruitt applied his brakes upon observing his truck travelling at an angle, he found himself unable to stop before sliding into the Chevrolet. Additionally, appellant argues, an unlev-el surface or slope in the immediate area of the mishap magnified the Monroe driver’s inability to control the movements of his vehicle. Evidence presented at trial, however, strongly contradicts these contentions.
1 sThe sizeable turn-around area, where the incident occurred, had been established by compacting a twelve-to-eighteen-inch layer of crushed concrete into a level surface. With use, this naturally would become topped with dirt, but the rock-like base provided sufficient traction for vehicles to maneuver despite wet or muddy conditions. Delaney Lewis, a Waste Management employee whom the trial court found especially credible, explained that the underlying materials still prevented a large garbage truck from slipping, even with mud thick enough to cover a person’s shoes.
Trial testimony also preponderately established that the only germane sloping consisted of a gradual, approximately eighteen-inch, descent from the road to the turn-around area. Of course, Pruitt and his helper, Willie Lewis, claimed the drop-off extended to the accident site, some forty feet off the road. In earlier depositions, however, they both stated that the turn-around area was level. In fact, Willie Lewis admitted that he changed his trial testimony after someone else made suggestions about the slope. Even Pruitt eventually conceded that he had come “off the slope” before the collision.
In essence, the City of Monroe contends that the trial court erred in believing Waste Management’s witnesses. Yet despite portraying somewhat muddier conditions at the landfill, none of the City’s witnesses contradicted Delaney Lewis’s explanation concerning traction at the accident site. As previously noted, the district judge considered this testimony quite persuasive.
*773 When findings are based on credibility determinations, the manifest error standard demands great deference to the conclusions of the fact-trier, in that only he can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Thus, upon review of the record in the present ease, we find no error in the lower court’s assessment of fault.
JJII.
In early 1984, the City of Monroe joined already-ongoing negotiations between the Ouachita Parish Police Jury and Waste Management concerning the construction and operation of a landfill to serve northeast Louisiana. Later, at trial, the City would maintain that Waste Management, in seeking an exclusive arrangement, eventually agreed to procure liability insurance protecting the municipality from its own acts of negligence. The dispute focuses on the wording, “additionally named insured,” used in Section 6.01 of the May 1984 contract allowing the landfill operator to receive all garbage collected by the City.[3] On appeal, it is complained that the district court erred both in allowing parol evidence to explain the phrase and in ultimately construing its meaning against the City. That position, however, is not well taken.
In addition to an indemnity clause (Paragraph V) protecting the contracting parties from claims arising out of any willful or negligent acts by Waste Management, the agreement provides in Section 6.01 that:
American Waste shall at all times, after the site has been fully permitted as contemplated herein, maintain in full force and effect employers liability, workmen compensation, public liability, and property damage insurance including contractual liability insurance coverages provided under [Paragraph] V above. The contracting parties shall be named as an additionally named insured. [Emphasis added.]
The City of Monroe contends that this language guarantees that the municipality, along with Waste Management, will be listed on any insurance policy as a named insured. The City’s own insurance expert, however, testified that the emphasized phrase has no technical meaning in the insurance industry and is uncertain as written. Thus, the trial court clearly did not err in allowing parol evidence. See Tolar, supra; Doyal, supra.
Representatives of Waste Management explained that, through the indemnity clause, their company agreed to hold the City of Monroe harmless from claims arising out of either the landfill operator’s fault or the existence of the facility. Then, in furtherance of that understanding, the subsequent provision (Section 6.01) sought to assure that the ^company had the wherewithal (an insurance policy) to provide that protection. By no means, according to these witnesses, did Waste Management intend to underwrite risks attributable to an independent party over which they had no control.
The City failed to demonstrate a different intent. Lynn Tubb, an attorney who negotiated the contract on behalf of the Ouachita Parish Police Jury, sought to place the police jury “on the same level” as Waste Management with respect to insurance coverage, but never contemplated the unlikely prospect of parish employees committing negligent acts at the landfill.[4] Instead, according to his testimony, he desired coverage for claims arising out of the existence or operation of the facility. Nor are we convinced that Thomas V. Gardner, Jr., assistant city attorney for Monroe, successfully bargained for the inclusion of the words “named insured” within Section 6.01. The phrase “additionally named insured” appears in all drafts of the contract, even those prepared before the City became involved in the negotiations. Furthermore, the primary representative of Waste Management testified that he specifically rejected Gardner’s efforts to obtain cov *774 erage for the municipality’s own negligence. See also LSA-R.S. 38:2216(G).

Conclusion

For the foregoing reasons, the district court judgment against LMRMA is reversed. In all other respects, the decision is affirmed. All costs, as limited by law, are assessed against the City of Monroe.
REVERSED IN PART; AFFIRMED IN PART.

. Evidence presented at trial shows that Pruitt, although not wearing his prescription glasses at the time, attempted to back up his garbage truck without a flagger on the rear of the vehicle. In doing so, he failed to see plaintiff standing as previously described. Neither did the City’s truck have an operable beeper device to warn bystanders of rearward movements.

. The self-insured City of Monroe qualifies as uninsured, thus potentially triggering any existing UM coverage. See Jones v. Henry, 542 So.2d 507 (La.1989). The trial court judgment appropriately granted LMRMA full reimbursement from the City.

. Other municipalities, in addition to the Ouachi-ta Parish Police Jury, also entered into the contract with Waste Management for use of the landfill.

. Parish workers would have no occasion to be at the landfill site as the police jury does not collect its residents’ garbage.