747 So.2d 731 (1999)
BOSSIER ORTHOPAEDIC CLINIC, et al., Plaintiff-Appellee,
v.
Kevin DURHAM, et al., Defendant-Appellant.
No. 32,543-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 1999.
*733 Stephen T. Collins, Shreveport, Mark D. Frederick, Zachary, William O. Hunter, III, Shreveport, Counsel for Appellant.
Jack M. Bailey, Jr., Shreveport, Counsel for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, Judge.
The defendants,[1] Kevin Durham and his legal representative, Norman R. Gordon & Associates, appeal the trial court's judgment in favor of plaintiffs,[2] Bossier Orthopaedic Clinic, A Medical Corporation ("Bossier Orthopaedic") and Michael T. Acurio, M.D., finding Norman R. Gordon, d/b/a Norman R. Gordon & Associates, and Kevin Durham liable for the balance due on medical services provided for Durham. The plaintiffs answered the appeal arguing that the trial court erred in finding that they were not entitled to recover damages for attorney fees incurred in collecting the debt. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
The defendant, Kevin Durham, was involved in a motor vehicle accident on October 28, 1994. Dr. Michael T. Acurio, an orthopaedist with the Bossier Orthopaedic Clinic, treated Durham for injuries he sustained as a result of the accident.
Durham signed a payment agreement in which he agreed to pay Bossier Orthopaedic $100 per month toward the balance of his medical account and any reasonable collection costs or attorney fees incurred in collecting a delinquent account. The defendant also signed a document pertaining to his medical records and a doctor's lien. The lien authorized Durham's attorney to withhold funds from any settlement to which he might be entitled in order to pay any outstanding fees owed to Dr. Acurio.
On December 20, 1994, attorney Stephen T. Collins forwarded a letter to the plaintiffs advising them that he would be representing Durham regarding his motor vehicle accident and that his firm, Norman R. Gordon & Associates, would "send your office $100.00 per month to be applied to Mr. Durham's account until the case is completed by settlement or judgment."
Sandra K. Hand, a collection agent with Bossier Orthopaedic, testified that prior to receiving the letter, she had telephoned Collins and an agreement was reached *734 whereby Collins's firm would pay $100 per month towards the balance of Durham's medical account. In consideration for the monthly payment, the plaintiffs agreed not to send the account to collections or charge interest on the balance. Hand testified that it was her understanding that the plaintiffs would receive $100 per month until there was a settlement, at which time, Collins's firm would pay the remaining balance in full.
Hand further testified that she telephoned Collins again on May 12, 1995 to inform him that the defendant's account was delinquent. According to Hand, Collins informed her that he would "take care of it." The record reflects that by May 19, 1995, the defendants had made two payments totaling $600, an amount equal to six monthly payments of $100. After the plaintiffs instituted their suit, the defendants made another payment in the amount of $1,300, leaving a balance of $14,282.00.
Collins testified that Durham received two insurance settlements, one in the amount of $100,000.00 and another totaling $15,000.00. According to Collins, his firm reduced its contingency fee from 40% and received 25% of the proceeds from the first settlement. He further testified that, after deducting attorney fees and other expenses, the firm deposited the remaining sums in an escrow account. Collins's firm received $4,139.20 in attorney fees from the settlement totaling $15,000.00. According to Collins, on May 18, 1995, his firm disbursed settlement proceeds to Durham totaling $42,465.77. Collins testified that when Durham received these proceeds, he was informed that he had an outstanding balance of $27,324 in medical bills and Durham signed the disbursement form accepting full responsibility for payment of the remaining medical bills.
Several additional exchanges occurred concerning the delinquent account before the plaintiffs filed suit on February 20, 1996 for collection of a debt on an open account, enforcement of a lien in favor of a physician and breach of contract. The defendants filed a counterclaim and a motion for summary judgment, which was denied.
The trial court found Norman R. Gordon & Associates liable for Durham's medical debt and ordered the firm to pay the balance of the account, including interest. The trial court denied the plaintiffs' claim for attorney fees.
The defendants filed a motion for new trial and an exception of no right of action. The defendants argued that, since Bossier Orthopaedic had merged with Orthopaedic Specialists of Louisiana, A Professional Medical Corporation ("Orthopaedic Specialists of Louisiana"), to form a new entity, Dr. Acurio and Bossier Orthopaedic had no right to proceed as plaintiffs in this action. The trial court denied the defendants' motion for a new trial and amended its judgment to include Orthopaedic Specialists of Louisiana as a plaintiff.
The defendants appeal. The plaintiffs have answered the appeal alleging that the trial court erred in failing to award attorney fees.

DISCUSSION

Assignment of Error No. 1
By their first assignment of error, the defendants argue that, as a result of the merger with Bossier Orthopaedic Clinic, only Orthopaedic Specialists of Louisiana, as a corporate entity, has the right to collect the debt incurred by or on behalf of Kevin Durham. The defendants argue that Dr. Acurio was not authorized to proceed in collection proceedings on behalf of Orthopaedic Specialists of Louisiana.
The exception of no right of action is appropriate when the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit in a particular case. LSA-C.C.P. art. 927; Gorum v. Louisiana Hospital Association Employee Benefit Trust, 95-468 (La.App. 3rd Cir. 11/2/95), 664 So.2d *735 662; Touzet v. V.S.M. Seafood Services, Inc., 96-0225 (La.App. 4th Cir.3/27/96), 672 So.2d 1011. When considering the exception, the court must ask whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. Touzet v. V.S.M. Seafood Services, Inc., supra.
When a plaintiff sues as a legal representative, his authority or qualification is presumed unless challenged by the defendant by the timely filing of the exception. LSA-C.C.P. art. 700; Swain For and on Behalf of Estate of Swain v. Life Insurance Company of Louisiana, 537 So.2d 1297 (La.App. 2d Cir.1989). The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision. LSA-C.C.P. art. 928.
Here, the defendants allege in their exception that Dr. Acurio did not have an interest in the claim. However, the defendants filed their peremptory exception after the trial court rendered judgment. Therefore, pursuant to LSA-C.C.P. art. 928, their objection to Dr. Acurio representing Orthopaedic Specialists of Louisiana was not timely. Even if defendants' exception had been timely, the evidence does not support their argument.
Dr. Acurio testified that he purchased a one-third ownership interest in Bossier Orthopaedic shortly after he began treating Durham. Dr. Acurio further testified that when Bossier Orthopaedic merged with Orthopaedic Specialists of Louisiana he retained part ownership in the surviving entity. The defendants failed to offer evidence to the contrary. Thus, Dr. Acurio established his interest in the subject matter of the suit. This assignment of error lacks merit.

Assignment of Error No. 3
By this assignment, the defendants argue that the trial court erred in admitting parol evidence to prove the assumption of a third party debt.
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. LSA-C.C. art. 3035. Suretyship must be express and in writing. LSA-C.C. art. 3038. Contracts of suretyship are subject to the same rules of interpretation as contracts in general. Pelican Plumbing Supply, Inc. v. J.O.H. Construction Company, Inc., 94-991 (La.App. 5th Cir.3/28/95), 653 So.2d 699.
Parol evidence is inadmissible to establish a promise to pay the debt of another person or to negate or vary the terms of an act under private signature. Pelican Plumbing Supply, Inc. v. J.O.H. Construction Company, Inc., supra; Tolar v. Tolar, 25,935 (La.App.2d Cir.6/22/94), 639 So.2d 399. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence. Tolar v. Tolar, supra.
Although parol evidence is inadmissible to vary the terms of a written contract, if the terms of a written contract are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and show the intent of the parties. Tolar v. Tolar, supra.
In interpreting provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms. Pelican Plumbing Supply, Inc. v. J.O.H. Construction Company, Inc., supra.
*736 In ascertaining the intention of the parties to a contract, where it cannot be adequately discerned from the contract or agreement as a whole, the facts and circumstances surrounding the parties at the time of contracting are a relevant subject of inquiry. Determining the intent of the parties becomes, in part, a question of fact. United Investors Life Insurance Company v. Alexander, 27,466 (La.App.2d Cir.11/1/95), 662 So.2d 831.
In the present case, the issue presented is whether the trial court erred in admitting parol evidence to determine whether Norman R. Gordon & Associates is liable for the balance of Kevin Durham's medical debt. The defendants argue that the letter Collins sent to the plaintiffs regarding payment of his client's medical debt establishes that the defendants only intended to be responsible for $100 per month and had no intention of binding themselves for any amount due after a settlement or judgment. The letter written by Collins does not state that he or his firm was agreeing to pay the full amount of the medical charges, nor is there any agreement in the letter to withhold from the settlement or judgment any amounts to pay the medical charges.
Collins's letter was sent approximately one month after Kevin Durham signed documents indicating that he would pay $100 per month and authorizing his attorney to withhold sufficient funds from any settlement that he received to pay his outstanding medical debts. Sandra Hand testified that the letter was written to confirm her telephone conversation with Collins concerning payment of the medical charges. According to Hand, the verbal agreement between the parties called for a monthly payment of $100 and that the balance of the account would be paid in full from proceeds from a settlement or judgment.
Further, at the time that the parties agreed to the payment plan, the length of time necessary to obtain a settlement or judgment was unknown. Therefore, considering the balance of the account at the time of the agreement, it would not be reasonable to conclude that the plaintiffs would have accepted $100 per month "until the case is completed by settlement or judgment" without first establishing some idea of the time it would take for a settlement or judgment.
Contrary to the defendants' argument, parol evidence was not admitted to prove that the defendants were liable for a third party debt, instead, it was admitted to determine the intent of the parties regarding the payment agreement. Considering the circumstances surrounding this case, the trial court did not err in allowing parol evidence to prove that, in establishing a payment agreement, it was the plaintiffs' intent that the balance of Durham's medical debt would be paid in full with funds received from the insurance settlement.

Assignment of Error No. 4
By this assignment, the defendants argue that the trial court erred in finding in favor of the plaintiffs based on the doctrine of detrimental reliance.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Orr v. Bancroft Bag, Inc., 29,046 (La.App.2d Cir.1/22/97), 687 So.2d 1068. The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Knight v. State, 30,902 (La. App.2d Cir.9/28/98), 718 So.2d 646. A promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment. Carter v. Huber & Heard, Inc., 95-142 (La.App. 3rd Cir.5/31/95), 657 So.2d 409. To recover under the theory of detrimental reliance, a plaintiff must prove three elements: a representation by conduct or word; justifiable reliance thereon; and, a change of position to one's *737 detriment because of the reliance. Knight v. State, supra.
The record clearly reflects that the defendants promised to pay the plaintiffs for medical services and that the plaintiffs reasonably relied on the promise. The problem arises in determining whether the plaintiffs relied on the defendants' promise to their detriment.
The defendants claim that they promised to pay $100 per month until they reached a final settlement. The defendants contend that the plaintiffs were informed that funds were insufficient to pay all of Durham's medical bills and that the plaintiffs might have to consider accepting 10% of Durham's debt.
Sandra Hand testified that she vaguely recalled Collins's proposal of 10% of the debt. She stated that she informed Dr. Acurio of the proposal and he refused. Hand testified that she noted the conversation that she had with Collins concerning a payment plan and that, as she understood, the defendants would pay $100 per month until settlement, at which time the balance would be paid in full.
Contrary to the defendants' assertion that the facts do not support a finding of detrimental reliance, approximately one month after his accident, Durham signed the documents pertaining to the payment agreement and the doctor's lien, authorizing his attorney to pay his medical debts from the insurance settlement proceeds. Collins knew of the outstanding debt and he testified that other doctors were paid from the proceeds of the insurance settlements. Collins knew or should have known that the plaintiffs also expected to be paid from the proceeds of the insurance settlements.
As previously stated, in consideration for the defendants making the monthly payments, the plaintiffs agreed not to send the account to collections or charge interest on the balance. The agreement also called for the balance to be paid in full if the account became delinquent. The record reflects that the account became delinquent after the first payment.
The trial court did not err in concluding that the plaintiffs were induced to believe that they would receive payment from the settlement proceeds and that they relied on this promise to their detriment. The assigned error lacks merit.

Assignment of Error No. 2
By this assignment, the defendants argue that the trial court erred in assessing judicial interest. The defendants assert that judicial interest should run from February 20, 1996, the date of judicial demand, rather than May 12, 1995, the date stated in the judgment and amended judgment.
The appropriate award of interest is not from the date of judicial demand as urged by the defendants, but from the time the debt became due. LSA-C.C. art.2000; Ortego v. Dupont, 611 So.2d 792 (La.App. 3rd Cir.1992).
Sandra Hand telephoned Collins on May 12, 1995 to inform him that Durham's account was delinquent. Thus, the trial court could reasonably have concluded that the debt became due on that date. Therefore, the trial court was correct in awarding judicial interest from May 12, 1995. This assignment of error is without merit.

Assignment of Error No. 5
By this assignment, the defendants argue that the plaintiffs failed to adequately mitigate damages. The defendants assert without explanation that the plaintiffs' lien was not properly executed. According to the defendants, failure to properly execute a lien prohibits the plaintiffs from recovering payment of the debt from the settlement proceeds.
The defendants offer no statutory authority or case law to support their contention. Nor has this court found any. This assignment of error is without merit.

Answer to Appeal
In their answer to the defendants' appeal, the plaintiffs argue that the trial *738 court erred in failing to award reasonable attorney fees.
A party shall recover attorney fees only when authorized by statute or stipulated by contract. Haskell v. Hawkins, 580 So.2d 453 (La.App. 5th Cir.1991). The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the extent of discovery and the time spent in court. Dupree-Simpson Farms v. Helena Chemical Co., 28,739 (La.App.2d Cir.10/30/96), 682 So.2d 838; United Building Company v. Harp, 25,852 (La.App.2d Cir.6/22/94), 639 So.2d 349.
In this case, the provision for attorney fees was set forth in the payment agreement whereby Durham agreed to be responsible for any reasonable collection costs or attorney fees incurred in collecting a delinquent account. Therefore, Durham is responsible for reasonable attorney fees.
The plaintiffs are claiming attorney fees in the amount of $10,388. However, the plaintiffs did not introduce any attorney billing records upon which a fee might be calculated and, considering the work reflected in the record, we find the amount claimed by the plaintiffs to be unreasonable.
The trial court erred in failing to award attorney fees. Under the facts of this case, we find $3,500 to be a reasonable amount to be awarded in attorney fees.

DECREE
For the foregoing reasons, the judgment of the trial court declaring Dr. Michael T. Acurio, Bossier Orthopaedic Clinic, A Medical Corporation, and Orthopaedic Specialists of Louisiana, A Professional Medical Corporation, as proper plaintiffs is affirmed. The judgment of the trial court finding the defendants, Kevin Durham and Norman R. Gordon, d/b/a Norman R. Gordon & Associates, liable for the balance of the medical debt is affirmed. The judgment of the trial court awarding judicial interest from May 12, 1995 is affirmed. We reverse the trial court's judgment denying plaintiffs' claim for attorney fees and render judgment against Kevin Durham awarding the plaintiffs $3,500 in attorney fees. Costs of this appeal are hereby assessed to the appellants, Kevin Durham and Norman R. Gordon, d/b/a Norman R. Gordon & Associates.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.
NOTES
[1] The original defendants were Kevin Durham, Stephen T. Collins and Norman R. Gordon & Associates. However, Stephen T. Collins was dismissed as a defendant in this case by stipulation of both parties.
[2] The original plaintiffs in this case were Bossier Orthopaedic Clinic, A Medical Corporation, and Dr. Michael T. Acurio. In January 1996, there was a merger between Orthopaedic Specialists of Louisiana and Bossier Orthopaedic Clinic. The surviving entity became known as Orthopaedic Specialists of Louisiana, A Professional Medical Corporation. As a result, the trial court amended its judgment to include Orthopaedic Specialists of Louisiana as a plaintiff.