BLEICH, J. (Pro Tempore),
Dissenting
|, Devastating economic repercussions might possibly develop throughout the lending industry if the original opinion of this court is maintained. Serious and harmful impact on the oil and gas industry is foreseeable. At a minimum, confusion will develop inside the legal community, as well as to other advisors to the respective companies within those industries if the original pronouncement of this court is maintained. Notwithstanding a generally well written and analyzed original opinion and the instructive language therein that this is a somewhat isolated fact setting, cautious managers and decision makers within those industries will incur a most chilling effect on their businesses. All of these developments can be potentially harmful in a broader sense; e.g. the potential impact on the financial condition of this state re^ suiting from-lost revenue, Additionally, the excessive awards of -attorney fees in the original opinion could produce inappropriate precedent for other cases.
I, therefore, with the highest degree of respect, dissent from the decision to deny rehearing. This dissent is not only based upon public policy but also because of legal error.
The majority imposes solidary liability on the mortgagee Wells Fargo Energy Capital, Inc. (“Wells Fargo”), in its capacity as a mortgage lender which had only a security interest in a mineral lease. The majority finds Wells Fargo solidarity liable with its- borrowers, Tauren Exploration, Inc. (“Tauren”) and Cubic Energy, Inc. (“Cubic”) (the “mineral lessees”), for á breach of the mineral lessees’ contractual and statutory obligations to produce in paying quantities, pay royalties, and respond to the mineral lessor’s demands relating to those obligations. Relying on the proposition |2stated in La. C.C, art. 1797 (“[a]n obligation may be solidary though it derives from a different source for each obligor”), Wells Fargo was determined to be solidarity liable with Tauren and Cubic arising out of their actions as to the landowner, Gloria’s Ranch.
I believe this determination was legal error. Solidary liability is never presumed and arises only from a clear expression of the parties’ intent or from law. La. C.C. art. 1796; Berlier v. A.P. Green Indus., *1226 Inc., 2001-1530 (La. 04/03/02), 815 So.2d 39.
The majority opinion has far-reaching implications on the banking industry as well as the oil and gas industry. It is wholly reasonable for a lender to impose certain safeguards to ensure that its collateral is protected, and the responsibilities of an owner should not be imposed on a lender for taking such measures. Solidary liability between a lender and its borrower/owner for its actions will have a calamitous effect in Louisiana on banking and the relationship between creditors and debtors. I agree with Wells Fargo’s assertion that the opinion will have a most chilling effect on the financing of oil and gas operations, which in turn will have an adverse economic effect on government and business in our state.
I further would grant rehearing concerning the issue of the award of attorney fees, both at the trial level and on the appeal in this matter.
At the trial court, there was no analysis of the provisions of Rules of Prof. Conduct, Rule 1.5 insofar as the fees being reasonable. The trial court accepted as correct the statement of counsel as to that which was incurred as attorney fees, as well as expert witness fees. Simply because counsel stated that certain amounts were paid or incurred does not remove the requirement that attorney fees must be reasonable. Smith v. Acadiana Mortgage of Louisiana, Inc., 42,795 (La. App. 2 Cir. 01/30/08), 975 So.2d 143; Bossier Orthopaedic Clinic v. Durham, 32,543 (La. App. 2 Cir. 12/15/99), 747 So.2d 731. Courts at every level should give careful and meticulous examination to proposed attorney fee requests. A fee request is not ipso facto reasonable even if not strenuously opposed.
Here, the majority approved an attorney fee—only for the appeal—of an additional $125,000. This amount is excessive on its face.
Understandably, time and energy was expended by all parties in connection with this appeal. Yet it is most difficult to conclude that preparation of briefs and appearing for argument would justify such a large amount. This writer agrees that a reasonable attorney fee for appellate work is warranted. However, when the research by learned counsel had already been mostly completed, the primary work was to finalize research, reconfigure briefs, then prepare for and present oral argument. Certainly all of this required great effort, but not to the extent of the amount awarded in the original award on appeal. It is noted that the trial court awarded an additional $11,200 in attorney fees incurred in the four-day trial, in additional to the $925,603 in pretrial attorney fees and expert costs. It is most difficult to conclude that it is reasonable to award the additional amount on appeal, ie., $125,000, originally granted by the majority.
To countenance the amount of this attorney fee award, for an appeal only, would create dangerous precedent in addition to being patently excessive. For these reasons, I would grant the rehearing and respectfully dissent from the denial of such.
BROWN, C.J., dissents from the denial of rehearing and strongly agrees with the written reasons assigned by J. Bleich.